These appeals involve the construction of an automobile insurance policy. They present the question whether the sole named insured was entitled to reject uninsured-motorist coverage with respect to some, but not all, additional insureds. We hold that it was.
 I. Facts and procedural history
Melvin Arthur Vaughn was an employee of Farmers Tractor Company, Inc. ("Farmers"). On April 25, 2002, Vaughn was driving a vehicle owned by Farmers and covered by an automobile insurance policy issued by Federated Mutual Insurance Company, Inc., when he collided with a vehicle driven by Ellen Chapman. Vaughn, who was injured in the accident, claims that Chapman is responsible for his injuries. Vaughn filed a workers' compensation claim with Fanners, which has been settled. He also filed a claim with Federated for uninsured/underinsured-motorist ("UM") benefits, based on his assertion that he was legally entitled to damages from Chapman in excess of the limit of her liability insurance.
Under its policy with Federated, Farmers maintained UM coverage for its directors, officers, partners, owners, and family members who qualified as insureds. However, it had expressly rejected UM coverage for "any other person who qualifies as an insured." As an employee, Vaughn qualified as an insured, but he was not included in any of the categories for which Farmers maintained UM coverage. Federated denied Vaughn's claim for UM benefits on that basis.
On April 27, 2004, Vaughn sued Federated and one of its agents, Jim Howell, in the Jefferson Circuit Court. His complaint alleged, in relevant part, breach of the insurance contract and bad-faith failure to investigate an insurance claim.[1] The defendants moved for a summary judgment, and on August 23, 2005, the trial court granted the motion with respect to the bad-faith claim. The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., and Vaughn appeals (case no. 1050611).
The trial court denied the defendants' motion for a summary judgment on the breach-of-contract claim, finding that Farmers' partial rejection of UM coverage was void. The trial court certified its order denying the summary-judgment motion for permissive appeal pursuant to Rule 5, Ala. R.App. P., stating that the controlling question of law was whether the policy provisions governing UM coverage were "void and unenforceable, as they violated the purpose and scope of the Alabama Uninsured Motorist Act. . . ." This Court granted permission to appeal (case no. 1041867).
 II. Analysis A. Farmers' partial rejection of UM benefits Section 32-7-23, Ala. Code 1975, provides: *Page 818 
 "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto . . . for the protection of persons insured there-under who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . provided, that the named insured shall have the right to reject such coverage"
(Emphasis added.)
This language establishes the general rule that a motor-vehicle policy must provide UM courage "for the protection of persons insured thereunder," but also provides an exception to the rule — i.e., the named insured has the right "to reject such coverage."
Vaughn admits that this language gives Farmers the right to reject UM coverage altogether, but he argues that Farmers could not maintain UM coverage with respect to some additional insureds but reject it with respect to others. According to Vaughn:
 "[O]nce the decision is made to include uninsured motorist coverage in the automobile policy, it must include all persons insured under the liability provisions of said policy in the class of insureds for uninsured motorist coverage purposes."
(Vaughn's brief in case no. 1041867 at 29.) Because Federated agreed to extend liability coverage to employees such as Vaughn, he says, it must extend UM coverage to those same employees if it elected to provide that coverage to other additional insureds.
There is language in Alabama caselaw that appears to support Vaughn's argument. In State Farm Automobile Insurance Co. v.Reaves, 292 Ala. 218, 223, 292 So.2d 95, 99 (1974), the Court stated that "once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds." The Court quoted this statement with approval in Billups v. Alabama Farm Bureau Mutual CasualtyInsurance Co., 352 So.2d 1097 (Ala. 1977).
The policy at issue in Reaves expressly provided liability coverage for a number of people other than the named insured. The named insured did not reject UM coverage, but the policy was silent as to whether UM coverage had been extended to the additional insureds. When one of the additional insureds was in an accident involving an uninsured motorist, the insurer argued that the uninsured-motorist statute required UM coverage only for the named insured and not for any additional insureds.[2]
The Court rejected that argument, noting that the statute required that coverage be extended (absent a rejection) to "persons insured [under the policy]," 292 Ala. at 223,292 So.2d at 99, and not merely to the named insured. Significantly, however, Reaves did not require the insurer to provide UM coverage, but only to "offer" it. The additional insureds were
 "the `persons insured thereunder' in the subject policy, within the provisions of § 74(62a)[, Code of Ala. 1940,] and as such were required to be given uninsured motorist coverage, absent a rejection of such coverage by the `named insured.'" *Page 819 
292 Ala. at 223, 292 So.2d at 99 (emphasis added); accordHolloway v. Nationwide Mut. Ins. Co., 376 So.2d 690, 694
(Ala. 1979) ("§ 32-7-23, absent rejection by the named insured, mandates uninsured motorist coverage for the protection of persons insured under a motor vehicle liability policy").
In Billups, a policy provided liability coverage for the named insured and for anyone using the covered vehicle "with the express or implied permission of the named insured," as required by statute. 352 So.2d at 1101. The named insured did not reject UM coverage with respect to any additional insureds, but the insurer inserted a provision into the policy that limited the scope of UM coverage to those using the vehicle with theexpress permission of the named insured.
Billups was a passenger in the covered vehicle when it collided with a vehicle driven by an uninsured motorist. The driver of the covered vehicle did not have the express permission of the named insured to use the vehicle. The trial court entered a judgment as a matter of law in favor of the insurer, enforcing the policy provision that required express permission. On appeal from that judgment, this Court held that the insurer could not unilaterally restrict UM coverage to those who used the covered vehicle with express permission, and it remanded the case to the trial court to determine whether the driver had the implied permission of the named insured to use the vehicle. Again, the case dealt with an attempt by the insurer to restrict the scope of UM coverage required by the statute, not the named insured's right to reject such coverage.
Reaves and Billups stand for the proposition that if the named insured does not reject UM coverage, the insurer must provide UM coverage not only to the named insured, but also to any additional insureds. However, neither case restricted the named insured's right to knowingly reject UM coverage with respect to additional insureds.
These cases, when viewed on their facts, contain no holding to support Vaughn's argument that a named insured's decision to accept UM coverage for some additional insureds prevents it from rejecting UM coverage with respect to other additional insureds. However, there is also a dearth of caselaw to support Federated's position that a named insured may partially reject UM coverage. The question is, therefore, one of first impression involving statutory interpretation and freedom of contract.
Section 32-7-23 gave Farmers the right "to reject [UM] coverage," and it does not qualify or restrict that right. Vaughn asks this Court to read the statute to grant Farmers "the right to totally reject such coverage, but not to partially reject it." The language of § 32-7-23 does not support, let alone require, this interpretation; because the greater typically includes the lesser, the right to reject totally UM coverage implies the right to reject it partially.
In fact, Vaughn's central argument for grafting such a restriction onto § 32-7-23 is that the "purpose" of the statute is to maximize the number of persons who can recover UM benefits; he also argues that courts are free to "strike down any policy provisions crafted by insurance companies that [they] deem to be contrary to or derisive of that purpose. (Vaughn's brief in case no. 1041867 at 24-25.) This is a public-policy argument. We have made clear that, in the context of an insurance contract,
 "`"`if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, *Page 820 
when entered into freely and voluntarily, shall be enforced by courts of justice.'"'"
Ex parte Life Inn. Co. of Georgia, 810 So.2d 744, 751
(Ala. 2001) (quoting Sutton r. Epperson, 631 So.2d 832,835 (Ala. 1993), quoting in turn other cases). Nothing in the text of § 32-7-23 prevented Farmers from rejecting UM coverage for Vaughn while accepting UM coverage for other insureds. This Court may not interfere with Farmers' freedom of contract on a public-policy consideration based on what Vaughn claims to be the "purpose" of the statute.
Farmers was entitled to reject UM coverage for employees such as Vaughn, notwithstanding that it maintained UM coverage for others. Federated did not breach the insurance contract by refusing to pay Vaughn's claim on that basis. We therefore reverse the trial court's order denying the defendants' motion for a summary judgment as to the contract claim and render a judgment in favor of the defendants as to that claim.
 B. Bad-faith failure to investigate
To recover for bad-faith failure to investigate an insurance claim, the insured must show that the insurer breached the insurance contract when it refused to pay the insured's claim.State Farm Fire Cas. Co. v. Slade, 747 So.2d 293,318 (Ala. 1999). As discussed above, Federated did not breach the insurance contract by refusing to pay Vaughn's claim for UM benefits. The defendants were thus entitled to a judgment as a matter of law on Vaughn's bad-faith claim, and the trial court correctly entered a summary judgment for them as to that claim.
1041867 — REVERSED AND JUDGMENT RENDERED.
1050611 — AFFIRMED.
SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, BOLIN, and PARKER, TJ., concur.
[1] Vaughn's complaint also included claims alleging misrepresentation, negligence, and wantonness. The trial court entered a summary judgment for the defendants as to those claims, and Vaughn has abandoned them.
[2] The uninsured-motorist statute in effect whenReaves was decided, § 74(62a). Title 36, Code of Alabama of 1940, was materially identical to § 32-7-23, Ala. Code 1975.