757 F.2d 1220
 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a
corporation, Plaintiff- Appellant,
v.
Jerry W. JACKSON, as the Administrator of the Estate of
Kenneth L. Ivey and Shellie K. Ivey, Defendants-Appellees.
 No. 83-7432.
 United States Court of Appeals,
Eleventh Circuit.
 April 16, 1985.
 
 Harvey Jackson, Jr., Jasper, Ala., for plaintiff-appellant.
 Jerry W. Jackson, Haleyville, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and HATCHETT, Circuit Judges, and GARZA*, Circuit Judge.
 PER CURIAM:
 
 
 1
 It appearing after oral argument in this case that the sole issue turned upon an unresolved question of Alabama state law, the court certified the following question to the Supreme Court of Alabama pursuant to the certification provision of the Alabama Constitution, Ala. Const. art. VI, amend. 328, Sec. 6.02(b)(3), and Rule 18 of the Alabama Rules of Appellate Procedure:
 
 
 2
 Whether Kenneth Ivey, at the time of his death, was 'a person insured' under the liability provisions of the policies in question in accordance with the holding in State Farm Automobile Insurance Company v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974).
 
 
 3
 The Supreme Court of Alabama, 462 So.2d 346, responded to the certification by stating that the district court had correctly interpreted applicable Alabama state law. Accordingly, it adopted as its own the district court's opinion in pertinent part. We publish in its entirety the Supreme Court of Alabama's adoption of the district court's opinion as the opinion of this court:
 
 
 4
 "1. This case arises out of a single motor vehicle accident in which Kenneth L. Ivey, deceased, was a passenger, which accident occurred on April 17, 1982, on what is known as the Strip Pit Road in Winston County, Alabama. This motor vehicle was owned and operated by Leslie Swart, Jr., who also died as a result of the accident. Leslie Swart, Jr. was a cousin of the mother of the deceased, Kenneth L. Ivey, and Leslie Swart, Jr. was a resident relative living with the deceased, Kenneth L. Ivey, and his parents, Mr. and Mrs. Shellie K. Ivey, at Route # 4, Box 160, Haleyville, Winston County, Alabama, at the time of this accident. Prior to April 17, 1982, the date of the accident, the plaintiff had issued seven (7) automobile liability insurance policies wherein defendant, Shellie K. Ivey, was the named insured in three (3) of these policies and Kenneth L. Ivey, deceased, was the named insured in four (4) of them. None of these policies had terminated as of the date of the accident and at that time the said Leslie Swart, Jr. was an uninsured motorist. Certified copies of the policies as listed in the complaint are authentic and true and correct.
 
 
 5
 "2. Under the three (3) policies issued to Shellie K. Ivey, the father of Kenneth L. Ivey, deceased, and the four (4) policies issued to Kenneth L. Ivey, deceased, the following definitions are contained:
 
 On page 2
 NON-OWNED CAR--means a car not:
 
 6
 1. owned by,
 
 
 7
 2. registered in the name of,
 
 
 8
 3. furnished or available for the regular or frequent use of: you, your spouse, or any relatives.
 
 
 9
 RELATIVE--means a person related to you or your spouse by blood, marriage or adoption who lives with you.--
 
 
 10
 YOUR CAR--means the car or the vehicle described on the declarations page.
 
 
 11
 "3. On page 5 of these policies:
 
 COVERAGE FOR THE USE OF OTHER CARS
 
 12
 The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car.
 
 WHO IS AN INSURED
 
 13
 When we refer to your car, a newly acquired car or a temporary substitute car, insured means:
 
 
 14
 1. you;
 
 
 15
 2. your spouse;
 
 
 16
 3. The relatives of the first person named in the declarations;--
 
 
 17
 When we refer to a non-owned car, insured means:
 
 
 18
 1. The first person named in the declarations;
 
 
 19
 2. his or her spouse;
 
 
 20
 3. their relatives;
 
 
 21
 "4. UNDER SECTION I--LIABILITY--COVERAGE A of all of the policies commencing on Page 5 thereof there is the statement: THERE IS NO COVERAGE: and continuing on page 6 thereof:
 
 2. FOR BODILY INJURY TO:
 
 22
 C. ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD.
 
 
 23
 "5. UNDER SECTION III--UNINSURED MOTOR VEHICLE--COVERAGE U on page 7 thereof the following statement is found:An uninsured motor vehicle does not include a land motor vehicle:
 
 
 24
 2. furnished for the regular use of you, your spouse or any relative;
 
 
 25
 "6. The vehicle involved was not an owned vehicle as to Shellie K. Ivey and Kenneth L. Ivey, deceased, but was owned by and furnished by Leslie Swart, Jr. for his regular use, Swart being a relative of both Shellie K. Ivey and Kenneth L. Ivey, deceased. Kenneth L. Ivey, deceased, was a resident relative living with his father and mother, Mr. and Mrs. Shellie K. Ivey, at Route # 4, Box 160, Haleyville, Winston County, Alabama, at the time of this accident.
 
 
 26
 "7. It is agreed that all seven (7) policies are introduced into evidence in this case.
 
 CONCLUSIONS OF LAW
 
 27
 "... The starting point is Sec. 32-7-23, Code of Alabama 1975, which provides:
 
 
 28
 No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of section 32-7-6, under provisions approved by the commissioner of insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer. (Acts 1965, No. 866, p. 1614).
 
 
 29
 "The earliest Alabama case cited by the parties, which appears to have a direct pertinency to the facts of this case, is State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974). In Reaves, the plaintiff, James Reaves, his mother Catherine Reaves, and his sister Annie Ruth Franklin, were all residents of the same household. State Farm had issued two automobile insurance policies to Annie Ruth Franklin only, but James was an 'insured' under the omnibus clauses of the two policies. James, a minor, was injured when his mother's uninsured motorcycle was struck by an uninsured motorist. James and his mother sought to recover from State Farm under the uninsured motorist provisions of his sister's policies. The sister's policies contained the following exclusions to the uninsured motorist provisions:
 
 THIS INSURANCE DOES NOT APPLY:
 
 30
 ....
 
 
 31
 (b) TO BODILY INJURY TO AN INSURED WHILE OCCUPYING OR THROUGH BEING STRUCK BY A LAND MOTOR VEHICLE OWNED BY THE NAMED INSURED OR ANY RESIDENT OF THE SAME HOUSEHOLD, IF SUCH VEHICLE IS NOT AN OWNED VEHICLE.
 
 
 32
 The policies defined 'owned motor vehicle' to mean 'the motor vehicle or trailer described in the declarations....'[1]
 
 
 33
 "While rejecting an argument to find in the Alabama statute the same intent which the Supreme Court of Florida had found in the Florida statute (Mullis v. State Farm Mutual Automobile Insurance Co., 252 So.2d 229 (Fla.1971)), Justice Bloodworth, in a unanimous decision, affirmed the trial court's conclusion that the exclusion clause recited above was void.
 
 
 34
 "Justice Bloodworth emphasized the language in Sec. 32-7-23 which states, '[u]nless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder....'; concluding that '[b]y the literal words of the statute, it mandates uninsured motorist coverage for "persons insured thereunder" in the policy.' Further that, 'The use of the broader term "persons insured thereunder" and the narrower term "named insured" in the same sentence appears to us to indicate clearly that the legislature intended to draw a distinction between the two types of insureds, and did indeed intend to require uninsured motorist coverage for the broader class "persons insured thereunder." ' 292 Ala. at 222, 292 So.2d 95. Further that:
 
 
 35
 Moreover, the use of the plural 'persons insured thereunder' in one clause and the singular 'named insured' in the other would indicate that the legislature envisioned that, in the type of policy in question here having the usual 'omnibus clause,' uninsured motorist coverage was intended to be extended to all 'persons insured thereunder,' without regard to the mentioned exclusion.
 
 
 36
 While we do not read the statute as requiring every automobile liability insurance policy to include an 'omnibus clause,' nevertheless once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds. Appellant admits that appellees here come within the policy definition of the word 'Insured' being relatives of the named insured and residents of the same household.
 
 
 37
 It is, therefore, that we conclude that appellees were among the 'persons insured thereunder' in the subject policy, within the provisions of Sec. 74 (62a) [Sec. 32-7-23], and as such were required to be given uninsured motorist coverage, absent a rejection of such coverage by the 'named insured.'
 
 
 38
 292 Ala. at 223, 292 So.2d 95.
 
 
 39
 "The Supreme Court of Alabama then concluded that the above recited exclusion was void as being repugnant to then Title 36, Sec. 74 (62a), Code of Alabama 1940 (now Sec. 32-7-23). The Court expounded:
 
 
 40
 Moreover, as the insurance policy in question reads, it appears to insure appellee James Reaves against bodily injury sustained if he were struck by a negligent, uninsured motorist when driving the car described in the policy; when driving any car owned by anyone other than the residents of the named insured's household, whether insured or uninsured; even, when walking.
 
 
 41
 To require an insurer under the statute to also extend coverage to such an insured while driving his own vehicle, or one belonging to another member of the household, though uninsured, does not place an unreasonable burden on an insurer. Such result not only does not conflict with the policy underlying the Uninsured Motorist Statute, but it furthers this policy. This Court has stated that policy to be: 'Uninsured motorist coverage is intended to provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists....' Gulf American Fire & Casualty Company v. Gowan, 283 Ala. 480, 483, 218 So.2d 688 (1969).
 
 
 42
 292 Ala. at 224, 292 So.2d 95 (emphasis added).
 
 
 43
 "Reaves stands for the proposition that if a person is insured under the liability coverage provision of a motor vehicle insurance policy and uninsured motorist coverage is not rejected, the uninsured motorist coverage dictated by Sec. 32-7-23 cannot be excluded from the policy as to such an insured person. In Reaves, the Supreme Court determined that the plaintiff was an 'insured' under provisions which stated:
 
 
 44
 Insured--the unqualified word 'insured' includes
 
 
 45
 (1) the named insured, and
 
 
 46
 (2) If the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and(3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and
 
 
 47
 (4) any other person while using the owned motor vehicle, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION, and
 
 
 48
 (5) under coverages A and B any other person or organization, but only with respect to his or its liability for the use of such owned motor vehicle by an insured as defined in the four subsections above.
 
 
 49
 292 Ala. at 220-21, 292 So.2d 95.
 
 
 50
 "Under the stipulated facts the following exclusion appears to cover this case:
 
 
 51
 An uninsured motor vehicle does not include a land motor vehicle
 
 
 52
 2. furnished for the regular use of you, your spouse or any relative.
 
 
 53
 However, a clause purporting to exclude uninsured motorist coverage was held to be void in Reaves, supra. See also Higgins v. Nationwide Mutual Insurance Co., 291 Ala. 462, 282 So.2d 301 (1973), (a clause which excluded automobiles owned by governmental entities from the definition of uninsured motorists was held void as to the plaintiff).
 
 
 54
 "This court's inquiry cannot stop, however, with a reading of the exclusion clause. The court must determine, pursuant to Reaves, whether Kenneth Ivey was 'a person injured' under the liability provisions of the policies in question.
 
 
 55
 "Each of the policies provides, as to liability coverage, that:
 
 We will:
 
 56
 1. pay damages which an insured becomes legally liable to pay because of:
 
 
 57
 a. bodily injury to others, and
 
 
 58
 b. damage to or destruction of property including loss of its use,
 
 
 59
 caused by accident resulting from the ownership, maintenance or use of your car; and
 
 
 60
 2. defend any suit against an insured for such damages with attorneys hired and paid by us. We will not defend any suit after we have paid the applicable limit of our liability for the accident which is the basis of the lawsuit.
 
 Further that:
 COVERAGE FOR THE USE OF OTHER CARS
 
 61
 The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car.
 
 Who Is an Insured
 
 62
 When we refer to your car, a newly acquired car or a temporary; substitute car, insured means:
 
 
 63
 1. you;
 
 
 64
 2. your spouse;
 
 
 65
 3. the relatives of the first person named in the declarations;
 
 
 66
 4. any other person while using such a car if its use is within the scope of consent of you or your spouse; and
 
 
 67
 5. any other person or organization liable for the use of such a car by one of the above insureds.
 
 
 68
 When we refer to a non-owned car, insured means:
 
 
 69
 1. the first person named in the declarations;
 
 
 70
 2. his or her spouse;
 
 3. their relatives; and
 
 71
 4. any person or organization which does not own or hire the car but is liable for its use by one of the above persons.
 
 The policies further provide that:
 
 72
 Relative--means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.
 
 
 73
 Your Car--means the car or the vehicle described on the declaration page.Insured--means the person, persons or organization defined as insureds in the specific coverage.
 
 Non-Owned Car--means a car not:
 
 74
 1. owned by,
 
 2. registered in the name of, or
 
 75
 3. furnished or available for the regular or frequent use of:
 
 
 76
 you, your spouse, or any relatives.
 
 Further that:
 THERE IS NO COVERAGE:
 
 77
 ....
 
 2. FOR ANY BODILY INJURY TO:
 
 78
 ....
 
 
 79
 c. ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD.
 
 
 80
 "On first blush, it would appear that Kenneth L. Ivey was an insured under the liability provisions of all the policies and that, under Reaves, supra, he was covered as a victim of an accident caused by an uninsured motorist under the provisions of all the policies at issue at the time of his death notwithstanding the exclusion clause. As to four of the policies, Kenneth L. Ivey was the named insured and the 'you' and 'the first person named in the declarations.' As to the other three policies, Kenneth L. Ivey was a relative of 'the first person named in the declarations.' Being thus prima facie covered under the liability provisions of all policies at issue, Reaves would appear to dictate that Kenneth L. Ivey was covered under the uninsured motorist provisions of all policies at issue and that the exclusion clause is void as to him. It should be remembered that James Reaves was injured while driving an uninsured motor vehicle owned by a relative member of the same household. Kenneth L. Ivey was a passenger in an uninsured vehicle owned by a relative member of the same household.
 
 
 81
 ....
 
 
 82
 "The court's conclusions are supported by language in Holloway v. Nationwide Mutual Insurance Co., 376 So.2d 690 (Ala.1979), where the court distinguished between 'insureds of the first class' and 'insureds of the second class.' Under the discussion in that case, Kenneth L. Ivey would be an 'insured of the first class' under all the policies. See 376 So.2d 694.[2] The court's conclusion is further supported by the following language in Alabama Farm Bureau Mutual Casualty Insurance Company v. Pigott, 393 So.2d 1379 (Ala.1981):
 
 
 83
 Appellant, in Reaves, supra, argued that uninsured motorist coverage was required only for the named insured, even though the liability provisions of the policy in question extended coverage to others, including relatives of the named insured who were residents of the same household. In rejecting appellant's argument, this Court said that once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds. Thus, the mandated reciprocal extent of uninsured motorist coverage is determined by the extent of liability coverage for which the parties have contracted in the same policy, once minimal statutory liability coverage is provided, and not by the extent of liability coverage which would have been provided in the policy of the third-party tort-feasor, if the tort-feasor had liability insurance.
 
 
 84
 It was also held in Reaves that Alabama's Uninsured Motorist Statute, Tit. 36, Sec. 74 (62a), Code 1940 (now Sec. 32-7-23, Code 1975), mandated uninsured motorist coverage for 'persons insured thereunder,' that is, persons insured under the liability provisions of the policy. Thus, a class of insureds named in the provisions of an automobile liability policy in Alabama are provided uninsured motorist coverage regardless of whether that class is specifically named in the policy providing uninsured motorist coverage.
 
 
 85
 393 So.2d at 1382-83.
 
 
 86
 "In Lambert v. Liberty Mutual Insurance Co., 331 So.2d 260 (Ala.1976), the Alabama Supreme Court interpreted Reaves as follows:In State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974), we construed our uninsured motorist statute as mandating uninsured motorist coverage for all 'persons insured thereunder' under the automobile liability policy. We held that because a brother and mother of a policyholder were 'insureds' under the omnibus clause of the liability policy they must also be covered under uninsured motorist provisions and therefore they would not fall under an 'exclusion' for injury suffered while occupying a vehicle owned by the 'named insured' or any member of the same household and not covered under the policy.
 
 
 87
 331 So.2d at 265.
 
 
 88
 "For other cases which interpret Reaves as authoritatively construing Reaves as conferring uninsured motorist coverage in favor of persons who are insured under the general liability coverage expressed in the relevant policy, see Insurance Company of North America v. Thomas, 337 So.2d 365, 369 (Ala.Civ.App.1976); Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co., 352 So.2d 1097, 1100 (Ala.1977); United States Fidelity & Guaranty Co. v. Perry, 361 So.2d 594, 596 (Ala.Civ.App.1978); and Nationwide Mutual Insurance Co. v. United Services Automobile Association, 359 So.2d 380, 381 (Ala.Civ.App.1978).
 
 
 89
 ....
 
 
 90
 "... The crucial language in Reaves which is applicable to this case is that which says: '[o]nce an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds.' 292 Ala. at 223 [292 So.2d 95] (emphasis added). Reaves further holds that once the liability coverage is extended to a class of insureds, the uninsured motorist coverage cannot be excluded. Reaves does not say that the liability coverage so extended must extend to every automobile which said insured may drive or occupy.
 
 
 91
 "It is apparent that State Farm intended to extend some liability coverage to Kenneth L. Ivey under his own policies and the policies under which Shellie K. Ivey is the named insured. While State Farm may not have intended the uninsured motorist coverage to be as expansive as is here declared, the Alabama Statute and the Reaves interpretation constructively supply that intent.
 
 
 92
 "It appears to this court that the uninsured motorist coverage inures to a person, not to a vehicle. It further appears that uninsured motorist coverage is not dependent on the insured person being injured in connection with a vehicle which is covered by the liability insurer against whom recovery is sought under the uninsured motorist provisions. While to have uninsured motorist coverage the person must have some liability coverage under the policy sued on, he need not have liability coverage in all events and for all purposes. Any liability coverage to an 'insured of the first class' spawns uninsured coverage which then becomes fixed as to that insured. Once in place the uninsured motorist coverage is in the nature of casualty or health and accident coverage which is conditioned on injury for which an uninsured motorist is legally liable. It is not necessary to find that Swart's automobile was covered by the liability provisions of the seven policies in order for Kenneth L. Ivey to have been covered under their uninsured motorist provisions. If Swart's automobile had been so covered he would not have been uninsured.
 
 
 93
 ....
 
 
 94
 The district court's conclusion that the deceased, Kenneth L. Ivey, was protected by the uninsured motorist coverage provisions of each of the seven policies in question is hereby affirmed.
 
 
 95
 AFFIRMED.
 
 
 
 *
 Honorable Reynaldo Garza, Circuit Judge for the Fifth Circuit, sitting by designation
 "[1] The motorcycle driven by James was not so described.
 "[2] The policies in question in this case provide, with reference to uninsured motorist coverage, as follows:
 Who Is an Insured
 Insured--means the person or persons covered by uninsured motor vehicle coverage.
 This is:
 
 
 [1]
 the first person named in the declarations;
 
 
 [2]
 his or her spouse;
 
 
 [3]
 their relatives; and
 
 
 [4]
 any other person while occupyng;
 a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car.
 Such vehicle has to be used within the scope of the consent of the first person named in the declarations of that person's spouse; or
 b. a car now owned by you, your spouse, or any relative, or a trailer attached to such a car. It has to be driven by the first person named or that person's spouse and within the scope of the owner's consent.
 Such other person occupying a vehicle used to carry persons for a charge is not an insured.
 
 
 [5]
 any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above
 In Holloway, the court said:
 The Uninsured Motorist Statute Code 1975, Sec. 32-7-23, absent rejection by the named insured, mandates unisured motorist coverage for the protection of persons insured under a motor vehicle liability policy. As heretofore construed by this Court, the statute mandates stacking in the case of the named or designated insureds as well as relatives living in the same household where such persons are included in the policy's definition of 'insureds' for purpose of liability. These persons are entitled to stack the available coverages because their right to coverage under the primary liability coverage is not limited to their use or occupanncy of a vehicle insured under the policy. A clause limiting their rights of uninsured motorist coverage to the minimum coverage available on only one insured vehicle would be an unreasonable derogation of the mandate of the state, because additional premium charges would not afford them any additional benefits.
 
 
 [376]
 So.2d at 694-95